UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRANCE AGOSTINI,

                                        Plaintiff,

                                                                    DECISION AND ORDER

-vs-
                                                                    14-CV-6188 CJS

T. BACKUS, CORRECTION OFFICER, D. VICTOR,
CORRECTION OFFICER, and SERGEANT T. WILL,
individually and in their official capacities,

                                        Defendants.
_____

## INTRODUCTION

This is an action under 42 U.S.C. § 1983 brought by Terrance Agostini ("Plaintiff"), a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Attica Correctional Facility ("Attica"). Now before the Court is Defendants' motion (Docket No. [#13]) for partial dismissal of the Amended Complaint [#5] under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The application is granted in part and denied in part.

## BACKGROUND

The facts in the Amended Complaint [#5] are accepted as true for purposes of this Decision and Order, and are discussed more fully below in the Discussion section.[1] It is sufficient to briefly note here that on October 4, 2013, Plaintiff was residing in the D Block

---

[1]It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it can consider. *See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep.24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

"Honor Block" at Attica, which is where he wanted to remain.  In order to remain in the Honor Block, however, Plaintiff needed to have a certain type of inmate work assignment. On October 4, 2013, Plaintiff was working as the Honor Block Clerk.  However, Defendant Corrections Officer Victor ("Victor") fired Plaintiff from his Clerk position, and vowed to prevent Plaintiff from obtaining any other work that would allow him to remain in D Block. Thereafter, Victor and Defendant Corrections Officer Backus ("Backus") attempted to prevent Plaintiff from obtaining another job, and threatened Plaintiff with retaliation when he indicated that he was going to notify their superior officer.  Eventually, Plaintiff complained about Victor and Backus, after which they issued him retaliatory misbehavior reports.  Additionally, Victor and Backus continued to verbally harass and threaten Plaintiff, as discussed more fully below.

On April 18, 2014, Plaintiff commenced this action.  On May 19, 2014, Plaintiff filed the Amended Complaint [#5].  The pleading contends that Victor and Backus violated Plaintiff's First Amendment rights, by retaliating against him, and his Eighth Amendment rights, by writing false misbehavior reports and threatening him. *See*, Amended Complaint ¶ ¶ 47-49.  The pleading further contends that Sergeant Will ("Will") covered-up the misconduct by Victor and Backus, and violated Plaintiff's due process rights by preparing a false investigation report.

On February 4, 2015, in lieu of answering the Amended Complaint, Defendants filed the subject motion for partial dismissal.  Defendants are not seeking to dismiss the retaliation claims against Backus or Victor in their individual capacities.  However, they are seeking dismissal of all claims against those two defendants in their official capacities. Further, Backus and Victor maintain that the claims against them lack merit to the extent

that they are based solely upon "verbal harassment" or the "filing of a false misbehavior report."

Additionally, Will seeks dismissal of all claims against him in any capacity, on the grounds that the Amended Complaint [#5] fails to plausibly allege a claim against him. Will's argument on this point is twofold:  First, he contends that the pleading fails to plausibly allege that he filed a false investigatory report, as Plaintiff contends; and second, he contends that even assuming that he filed a false investigatory report, as Plaintiff contends, such fact does not establish a constitutional violation.

Lastly, Defendants maintain that Plaintiff's claim for compensatory damages should be dismissed, pursuant to 42 U.S.C. § 1997e(e), since he does not claim that he suffered any physical injury.

## DISCUSSION

### Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6)

The general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929

(2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[2] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).  "The application of this 'plausibility' standard to particular cases is 'context-specific,' and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Management Inc.*,  712 F.3d 705, 719 (2d Cir. 2013) (citation and internal quotation marks omitted).

---

[2]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. den.* 531 U.S. 1052, 121 S.Ct. 657 (2000).

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 1983 Liability

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> 
> \*\*\*
> 
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).[3]

---

[3]Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (S.D.N.Y. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases). It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors. *See, Platt v, Incorporated Village of Southampton*, 391 Fed.Appx. 62, citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, which sets forth all five of the *Colon* bases for imposing supervisory liability.

### Official Capacity Claims

Under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (noting that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," though such immunity may be waived or abrogated in a particular case). In the instant case, Plaintiff is suing for money damages, injunctive relief and declaratory relief. To the extent Plaintiff is seeking money damages against Defendants in their official capacities, such claims are dismissed.

### Claims Against Sergeant Will

The Amended Complaint [#5] alleges that Will was employed as a Corrections Sergeant in D Block at Attica "at all relevant times." The next mention of Will is at ¶ 35 of the Amended Complaint, when Plaintiff indicates that, on November 19, 2013, Will testified at a disciplinary hearing, "to explain [a] Misbehavior Report" written by Backus and Victor, after which Plaintiff was found not guilty by the hearing officer.  The pleading does not claim that Will did anything improper at the hearing, such as testifying falsely.  However, the pleading alleges, in conclusory fashion, that Will, who supervised Backus and Victor, "authorized the misbehavior report to be written against Plaintiff." Amended Complaint [#5] at p. 38.

The Amended Complaint further alleges that,  after Plaintiff was found not guilty of the misbehavior report issued to him on November 16, 2013, he filed an inmate grievance concerning "defendants." Amended Complaint [#5] at ¶ 36.   More specifically, the

grievance, which is attached to the Amended Complaint as Exhibit A, demanded that Attica's Superintendent, "M. Bradt," investigate Backus and Victor, but did not mention Will. The pleading further indicates that on December 4, 2013, Plaintiff received a written response from one of  Bradt's deputies, which referenced the fact that an unnamed corrections sergeant had interviewed Plaintiff about his grievance, but that Plaintiff had not been able to provide and "witnesses or any other pertinent information" to the sergeant to support his grievance. Amended Complaint [#5] at p. 38.  The Deputy Superintendent's response is attached to the Amended Complaint as Exhibit B.

Plaintiff, though, denies that any corrections sergeant interviewed him about his grievance.  Instead, Plaintiff contends that the unnamed corrections sergeant was actually Will, and that Will falsely represented to the Superintendent that he had investigated Plaintiff's grievance.   On the basis of such allegations, the pleading states that Will "obstructed Plaintiff's right to Due Process in violation of the Fourteenth Amendment of the United States Constitution." *Id*. at ¶ 50; *see also, id*. at p. 10 (reiterating that Will was guilty of "fabricating and falsifying a report to submit to his superiors.").

Will maintains that the pleading fails to state a claim against him, because it does not plausibly suggest that he was personally involved in the investigation of Plaintiff's grievance, and that even if it did, it is not a constitutional violation to falsely represent to one's superiors that he investigated a grievance.  In response to Will's motion to dismiss, Plaintiff asserts that "further discovery will corroborate" his claim against Will.  However, Plaintiff also states that he "obtained documentation from DOCCS to validate that it was indeed Sgt. Will who conducted the investigative report [sic]." Pl. Response [#15] to Motion to Dismiss at p. 5.  Quite curiously, Plaintiff does not explain why he needs further

discovery to establish Will's involvement if he already has documentation establishing that fact, nor does he offer any reason whatsoever for not submitting such documentation to the Court, if it truly exists, particularly when he has submitted many other documentary exhibits.  In any event, the issue is whether the Amended Complaint states a plausible claim, not whether Plaintiff might be able to state a plausible claim at some future time as a result of conducting discovery.  *See, e.g., Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (Observing that Rule 8's liberal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (citation omitted).

Having considered all of the foregoing, the Court finds that the Amended Complaint fails to state an actionable claim against Will.  In the first place, the pleading does not set forth any actionable claim against Will in connection with the misbehavior reports written by Victor and Backus.  Further, with regard to Plaintiff's inmate grievance, even assuming that Will falsely informed Attica's Superintendent that he had interviewed Plaintiff in connection with the grievance, such fact would not establish a constitutional violation. *See, Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 434 (S.D.N.Y. 2012)  ("A prisoner has no constitutional right to a prison grievance procedure or to have his grievances investigated.").  In that regard, the pleading does not claim that Will wrote the false report in order to retaliate against Plaintiff for any particular protected activity.  More importantly, the pleading is deficient because it does not plead facts to plausibly suggest that Will had anything to do with the investigation of Plaintiff's inmate grievance.  For example, there are no facts pleaded to support the idea that Will was the unnamed Sergeant who claimed to

have investigated Plaintiff's grievance.  To the contrary, it is evident that Plaintiff is merely guessing that Will was involved, and that he hopes to confirm his suspicion through discovery.  Beyond that, there is no factual allegation to plausibly suggest that Will was aware of the alleged retaliatory plot by Backus and Victor, or that he shared their negative attitude toward Plaintiff.  Accordingly, the claim against Will is entirely speculative, and must therefore be dismissed.

*Claims Against Backus and Victor Based Upon "Verbal Harassment" and "Filing of a False Misbehavior Report*

Backus and Victor maintain that Plaintiff's 8th Amendment claim is based upon alleged "verbal harassment by them," which they contend is not actionable as a constitutional violation.  Backus and Victor further maintain that, while the issuance of a false behavior report as retaliation is actionable, the mere issuance of a false misbehavior report, without more, is not actionable as a constitutional violation.  Defendants are correct that, in general, "verbal harassment, without more, is not actionable under § 1983," and that "a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of [mis]conduct." *Williams v. Dubray*, No. 13–1293–pr, 557 Fed.Appx. 84, 86-87 (2d Cir. Feb. 26, 2014) (citations and internal quotation marks omitted).  Verbal harassment alone is also generally insufficient to support a retaliation claim. *See, Figueroa v. Holmes*, No. 9:13–CV–48 (FJS/ATB), 2013 WL 5702269 at *6 (N.D.N.Y. Oct. 18, 2013) ("Here, plaintiff alleges only that defendant Holmes engaged in a verbal threat, therefore, he has not asserted an adverse action sufficient to support a retaliation claim.") (citations omitted).  Although, some threats may be serious enough to qualify as a retaliatory "adverse action." See, *Ford v. Palmer*, 539 Fed.Appx. 5, 7 (2d Cir. Sep. 24, 2013)

(corrections officer's threat to tamper with inmate's water was sufficient to plausibly plead retaliatory "adverse action.").

In the instant case, liberally construing the Amended Complaint [#5], Plaintiff alleges that on October 4, 2013, Defendant Victor became angry at him, after Victor overheard Plaintiff reprimanding an inmate porter for allegedly failing to insure that the proper amount of milk was being delivered to inmates.  Victor told Plaintiff that he was "fired" from his job as "D Block Clerk," and that his days in Honor Block were "numbered."  When Plaintiff stated that he would speak to Victor's superior officer, Victor stated that if Plaintiff did so, Victor would have him placed in punitive segregation. *See*, Amended Complaint at ¶ 17 ("[D]o that and you're going to the Box (punitive segregation).").  Defendant Backus, who overheard the exchange, similarly threatened to "get rid of" Plaintiff if he complained to their superior officer. *Id*. ("[I]f he snitches to the sergeant and gets a job we'll get rid of him our way.").  In the context of the entire Amended Complaint, it is apparent that "getting rid of" Plaintiff meant getting him out of D Block.  Despite such threat, Plaintiff claims that on October 6, 2013, he wrote to Sergeant Schiffer and complained, and asked Schiffer for another job.[4]

Subsequently, according to the Amended Complaint, persons in "D Block" attempted to prevent Plaintiff from obtaining another job, and when those efforts were unsuccessful, and Plaintiff obtained another job, Victor and Backus "retaliated" against Plaintiff by filing a false misbehavior report against him. (November 16, 2013 misbehavior report).  As already mentioned, Plaintiff was found "not guilty" of the charges contained in the

---

[4]See, Amended Complaint ¶ 19 & Ex. F(2).

10

misbehavior report.   The Amended Complaint further states that, on or about November 19, 2013, following the dismissal of the misbehavior report, Plaintiff filed a grievance against Backus and Victor, and unspecified "defendants" made unspecified "continued and repeated threats" threats toward him. *See*, Amended Complaint at ¶ 37.   On December 4, 2013, Plaintiff learned that his grievance was denied.

The Amended Complaint next alleges that on December 9, 2013, Plaintiff filed another grievance against Victor, after Victor allegedly failed to mail a letter that Plaintiff had written to his attorney.   The following day, December 10, 2013, Victor threatened Plaintiff with unspecified "bodily harm" for filing the grievance, and filed a misbehavior report against Plaintiff. *See*, Amended Complaint at ¶ 43 ("[P]laintiff was again threatened with bodily harm.").   On December 16, 2013, according to the pleading, Plaintiff was found guilty of the charges set forth in Victor's misbehavior report.

The pleading further indicates that Plaintiff was subsequently moved from D Block to B Block, and that in March 2014 and May 2014, while Plaintiff was housed in B Block, he heard from other inmates that Backus had told B Block officers to "get rid" of Plaintiff, and had made an unspecified "threat of bodily harm" toward Plaintiff. *See*, Amended Complaint at ¶ ¶ 45-46.

Viewing these facts in light of the aforementioned legal principles, the Court finds that Victor's termination of Plaintiff's employment as D Block Clerk,[5] as well as the alleged threats by Victor and Backus prior to Plaintiff's written complaint to Sergeant Schiffer,[6] are

---

[5]*See, Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (New York State inmates have no constitutional right to a particular work assignment).

[6]*See*, written complaint dated October 6, 2013, Amended Complaint Ex. F(2).

not actionable under § 1983 as independent claims.  In that regard, the alleged actions are not sufficient to establish constitutional claims by themselves, nor do they qualify as retaliatory adverse actions, since they are not sufficiently severe and were not made in response to protected activity.  Similarly, the alleged threats made in March 2014 and May 2014, are not actionable, either as independent claims or as retaliation.  Accordingly, any claims based upon those alleged events are dismissed.

However, Plaintiff's retaliation claims may go forward insofar as they are based on the issuance of retaliatory misbehavior reports.  In that regard, liberally construing the Amended Complaint, Plaintiff alleges that after he disregarded the warnings by Victor and Backus and complained to Sergeant Schiffer, Victor and Backus retaliated by filing a false misbehavior report against him.  Similarly, Plaintiff alleges that after he filed an inmate grievance against Victor and Backus, they again retaliated against him by filing a second false misbehavior report. *See, e.g., Guillory v. Haywood*, 2015 WL 268933 at *17 -18 (N.D.N.Y. Jan. 21, 2015) ("The filing of a grievance has been found to constitute protected First Amendment conduct for purposes of a retaliation claim.  Inmate's verbal complaints to corrections officers and prison officials have also been found to constitute activity protected by the First Amendment.") (citations omitted).

### *Defendants' Application to Dismiss Any Claim for Compensatory Damages Under 42 U.S.C. § 1997e(e)*

Plaintiff is seeking the following kinds of relief: 1) a declaratory judgment; 2) injunctive relief; 3) compensatory damages; and 4) punitive damages.  With regard to compensatory damages, Plaintiff is demanding money damages from Victor and Backus for the following alleged injuries: 1) the violation of his federal constitutional rights; 2)

"emotional injuries" and "mental anguish" from Defendants' alleged threats; 3) time spent in "punitive segregation" due to a false misbehavior report; and 4) "an academic leave of absence from collegiate studies" caused by Defendants.

Plaintiff's ability to recover money damages is limited by 42 U.S.C. § 1997e(e), which states, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Defendants maintain that Plaintiff's claims for compensatory damages should be dismissed entirely, pursuant to 42 U.S.C. § 1997e(e), since Plaintiff does not claim that he suffered any physical injury. More specifically, Defendants contend that since Plaintiff's First Amendment retaliation claims do not involve any physical injury, the most that he can recover is one dollar in nominal damages, plus any punitive damages that a jury might impose. For support of their argument, Defendants cite *Edwards v. Horn*, No. 10 Civ. 6194(RJS)(JLC), 2012 WL 760172 at *22 (S.D.N.Y. Mar. 8, 2012), which held that an inmate plaintiff could not recover compensatory damages for a retaliation claim, since he did not claim to have suffered any physical injury.

The Court agrees with Defendants that Plaintiff is barred from recovering money damages for "emotional injuries" and "mental anguish," pursuant to § 1997e(e). However, § 1997e(e) does not bar Plaintiff from attempting to obtain declaratory relief, injunctive relief, nominal damages or punitive damages. Moreover, to the extent that Defendants maintain that an inmate cannot ever recover compensatory damages under § 1983 in the absence of a physical injury, they are mistaken, since the Second Circuit has indicated that § 1997e(e) does not bar a plaintiff from recovering compensatory damages for "actual

injury" resulting from a constitutional violation, even where there is no physical injury. *See, Thompson v. Carter*, 284 F.3d 411, 416-418 (2d Cir. 2002).  Such "actual injury," though, must be more than "the intangible harm presumed to flow from constitutional injuries." *Thompson v. Carter*, 284 F.3d at 418.  That is, "actual injury" is not merely the violation of the plaintiff's constitutional right, for which, without more, he would only be entitled to nominal damages, but must be some type of tangible injury flowing directly from the constitutional violation.  For example, in *Thompson v. Carter*, the Second Circuit held that § 1997e(e) did not bar an inmate plaintiff from recovering compensatory damages for lost property, where such property was seized without due process. *Thompson v. Carter*, 284 F.3d at 418 (*citing Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999); *see also, McGregor v. Jarvis*, Civ. No. 9:08–CV–770 (GLS/RFT), 2010 WL 3724133 at *3 (N.D.N.Y. Aug. 20, 2010) (Citing *Thompson v. Carter* for the proposition that § 1997e(e) "does not bar injunctive or declaratory relief, nor nominal, punitive, *or actual injury ( i.e., property loss)* damages.") (emphasis added).  Apart from a loss of property, though, it is unclear to this Court what other types of "actual injury" resulting from a constitutional violation, not involving physical injury to the inmate's body, might have been  envisioned by the Court in *Thompson*.

   In any event, this issue has not been sufficiently briefed at this stage of the litigation to allow the Court to make a ruling under § 1997e(e) as to Plaintiff's demands for compensatory damages, with the exception of the claim for compensatory damages based upon "emotional injuries" and "mental anguish" discussed earlier.

CONCLUSION

Defendants' application for partial dismissal [#13] is granted in part and denied in part.  All claims against Will are dismissed with prejudice, and the Clerk is directed to terminate Will as a party to this action.  The official-capacity damages claims against Victor and Backus are dismissed.  Any claims against Victor or Backus based upon events occurring prior to October 6, 2013 are dismissed, as are any claims involving alleged threats in 2014.  The remaining claims, involving two alleged instances of retaliation by Victor and Backus, based upon the issuance of retaliatory misbehavior reports, may go forward.  Defendant's application to dismiss Plaintiff's claim for compensatory damages is granted as to the demand for compensatory damages for "emotional injuries" and "mental anguish" set forth in paragraph C(1)(b) on page ten of the Amended Complaint, but is otherwise denied.  Defendants are directed to file and serve an answer to the Amended Complaint within twenty days of the date of this Decision and Order.

So Ordered.

Dated: Rochester, New York
        April 9, 2015

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge